UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PUMPKIN INVESTMENTS, LLC,

                              Plaintiff,

         -v-

XL INSURANCE AMERICA, INC., et al.,

                             Defendants.

24 Civ. 1024 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Pumpkin Investments, LLC ("Pumpkin") brought suit in New York State Supreme Court against Defendants XL Insurance America, Inc., ("XL"), Valley Forge Insurance Company ("Valley Forge"), and United Surgical Partners International, Inc. ("USPI") over an insurance dispute related to water damage at a property owned by Pumpkin in Anaheim, California. Dkt. 7, Ex. 1 ¶¶ 1–3. XL removed the case to federal court, with the consent of all co-defendants. Dkt. 1 ¶ 15. Pending now before the Court are Pumpkin's motion to remand to state court and XL's motion to dismiss the claims against it. For the reasons that follow, the Court denies the motion to remand, and grants the motion to dismiss.

I.     **Factual and Procedural Background**

What follows are the limited facts necessary to resolve the instant motions.

Pumpkin is a California LLC. Dkt. 7, Ex. 1 ("Compl.") ¶ 5. XL is an insurance company domiciled in Delaware with a principal place of business in Connecticut. *Id.* ¶ 7. Valley Forge is an insurance company domiciled in Pennsylvania with a principal place of business in Illinois. *Id.* ¶ 6. USPI is a company domiciled in Delaware with a principal place of business in Texas. *Id.* ¶ 8.

Pumpkin (at all relevant times) owned a building in Anaheim, California. *Id.* ¶ 12. Around July 1991, USPI's predecessor-in-interest signed a lease agreement with Pumpkin's predecessor-in-interest to rent the Anaheim property for use as a surgical center. *Id.* ¶ 13. At some point after, in connection with this property, Pumpkin obtained an insurance policy from Valley Forge, which remained in effect at all relevant times. *Id.* ¶ 14. XL also issued USPI an insurance policy covering the Anaheim property that named Pumpkin as an additional insured. *Id.* ¶ 15; *see also* Dkt. 8, Ex. 2 ("XL Policy" or "Policy").

In or around March 2021, a "major water loss" occurred at the Anaheim property. Compl. ¶ 16. Pumpkin asserts that USPI knew of this water damage when it occurred, but Pumpkin first learned of it after a "routine inspection of the property in May 2021[.]" *Id.* Pumpkin alleges, on information and belief, that USPI did not inform Pumpkin, Valley Forge, or XL of the water loss despite knowing of it. *Id.* ¶ 17.

After Pumpkin learned of the water loss, it "immediately reported the claim to Valley Forge and XL Insurance." *Id.* ¶ 18. Valley Forge accepted the claim and paid $116,885.60 towards the loss. *Id.* ¶¶ 18, 20. XL, however, refused to open a claim in response to Pumpkin's submission; it opened one based on USPI's, but ultimately refused to pay on that claim. *Id.* ¶ 18. Pumpkin estimates that the cost to repair the water damage was $2,625,388. *Id.* ¶ 19. It alleges that, although the loss was covered under both Valley Forge's and XL's insurance policies, neither defendant has paid additional sums (beyond the sum initially paid by Valley Forge) toward that claim. *Id.* ¶¶ 19, 21.

On May 11, 2023, Pumpkin filed suit against XL, Valley Forge, and USPI in federal district court in the Central District of California. *Pumpkin Invs., LLC v. XL Ins. Am., Inc.*, No. 23 Civ. 3617 (HDV) (AFM) (C.D. Cal. May 11, 2023). XL moved to dismiss on the ground of

2

*forum non conveniens*, under Federal Rule of Civil Procedure 12(b)(3). Dkt. 1, Ex. 1 at 23. XL argued that under a mandatory, exclusive forum selection clause in the XL Policy, all disputes under the policy requiring judicial resolution were required to be "brought and heard in a court of competent jurisdiction within the State of New York." *Id.* at 24. The district court granted XL's motion. Finding the forum selection clause enforceable and that it was not a proper venue under the clause, the court dismissed the case, stating it was not apparent in which district the case could have been brought or was to be transferred. *Id.* at 27.

On December 5, 2023, Pumpkin refiled the case, in New York State Supreme Court in Manhattan. Compl. at 25. On December 8, 2023, it served XL via a statutory agent, the New York Department of Financial Services ("NYDFS"). Dkt. 7, Ex. 3. On December 13, 2023, NYDFS forwarded the complaint to XL through USPS. Dkt. 25 at 2. But, because XL had not updated its address with the NYDFS, the mailing was rerouted; XL first received the package containing the complaint on January 11, 2024. Dkt. 19 at 5.

On February 12, 2024, XL filed a notice of removal in this Court. Dkt. 1. On February 20, 2024, XL filed a motion to dismiss the complaint, attached exhibits, and memorandum of law in support. Dkts. 8, 9 ("XL Br."). That day, the Court issued an order directing Pumpkin either to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a), or elect to oppose the motion to dismiss. Dkt. 10. On March 12, 2024, Pumpkin filed an opposition to the motion to dismiss, plus an affidavit and attached exhibits. Dkts. 14 ("Pumpkin Resp. Br."), 15.

On March 13, 2024, Pumpkin filed a motion to remand the case, and a memorandum and affirmation in support. Dkts. 18, 20, 23 ("Pumpkin Remand Br."). On March 26, 2024, XL filed a memorandum in opposition to remand, Dkt. 25 ("XL Resp. Br."), and a reply in further support

3

of its motion to dismiss, Dkt. 26 ("XL Reply Br."). On April 2, 2024, Pumpkin filed a reply of law in further support of remand. Dkt. 30 ("Pumpkin Reply Br.").

## II. Motion to Remand

### A. Applicable Legal Standards

Under 28 U.S.C. § 1446(a), a defendant may remove an action from state to federal court by filing a notice of removal in federal court. *See* 28 U.S.C. § 1446(a). The defendant must file within 30 days after its receipt, "through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." *Id.* § 1446(b)(1). "Once a case has been removed to federal court, a party may move to remand the case to state court." *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir. 2005).

On a motion to remand, the removing defendant "has the burden of establishing that removal was proper." *Tantaros v. Fox News Channel, LLC*, 427 F. Supp. 3d 488, 493 (S.D.N.Y. 2019) (2d Cir. 2021). The court "must resolve any doubts against removability," *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007), and "accept[] as true all relevant allegations contained in the complaint and construe[] all factual ambiguities in favor of the plaintiff," *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) (quoting *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1318 (S.D. Miss. 2003)).

### B. Discussion

Pumpkin argues remand is warranted for two reasons: (1) XL's removal notice was untimely, and (2) the forum selection clause exclusively designates New York state, not federal, courts as the proper fora for this action.

4

### 1. Timeliness of Notice

Pumpkin contends that XL's notice of removal was untimely—outside the 30-day deadline—because Pumpkin effected service on December 8, 2023 and XL did not file a notice of removal until February 12, 2024, some 66 days later. Pumpkin Remand Br. at 4–6. That argument, however, is based on an error of law.

Under 28 U.S.C. § 1446, a defendant must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading[.]" 28 U.S.C. § 1446(b)(1). Critically here, courts generally agree that the 30-day clock for timely removal begins when the defendant (as opposed to its statutory agent) receives the initial pleading. *Gates Const. Corp. v. Koschak*, 792 F. Supp. 334, 336 (S.D.N.Y. 1992). Although § 1446(b)(1) provides for receipt through service, "[s]ervice of process under state law does not control for removal purposes." *Id.* (quoting *Tyler v. Prudential Ins. Co. of Am.*, 524 F. Supp. 1211, 1213 (W.D. Pa. 1981)). The "heavy weight of authority" thus holds that, when the plaintiff has served a statutory agent, the 30-day removal clock "runs from receipt of the pleading by the defendant rather than the statutory agent." *Cygielman v. Cunard Line Ltd.*, 890 F. Supp. 305, 307 (S.D.N.Y. 1995) (collecting cases); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 198 (2d Cir. 2001). This doctrine reflects the view that a defendant's right to have its case heard in federal court should not turn on how quickly or sluggishly a statutory agent delivered the service papers. *Cygielman*, 890 F. Supp. at 307.

Here, XL filed its notice of removal within 30 days of receiving the Complaint from its statutory agent, thus complying with § 1446(b)(1). On December 8, 2023, Pumpkin sent the complaint to the NYDFS. The NYDFS forwarded the complaint via USPS to XL on December 13, 2023, but because the NYDFS sent the complaint to an old address, XL did not actually receive the package until January 11, 2024.

5

Accordingly, the 30-day removal clock started running on January 11, 2024. Thirty days from January 11, 2024 is February 10, 2024, a Saturday. Under Federal Rule of Civil Procedure 6(a)(1)(C), a time period stated in days "continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." As a result, XL's deadline to file for removal was the following Monday—February 12, 2024. XL met this deadline when it filed a notice of removal that day. Dkt 1. Its notice of removal was therefore timely.

### 2. Forum Selection Clause

Pumpkin alternatively argues that, under the forum selection clause in the XL Policy, this action may be brought only in New York state court. For several reasons, that argument fails.

First, the language of the forum selection clause contemplates suit in either state or federal courts in New York. The forum selection clause states, in relevant part:

> In the event that any disagreement arises between the 'Insured' and the 'Company' requiring judicial resolution, the 'Insured' and the 'Company' each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York.

XL Policy at 73. Courts have interpreted the phrase "a court of competent jurisdiction within the State" to include federal as well as state courts in the relevant geographical area. *See DCA Food Indus. Inc. v. Hawthorn Mellody, Inc.*, 470 F. Supp. 574, 582 (S.D.N.Y. 1979) (the District Court for the Southern District of New York is "clearly a 'court of competent jurisdiction' within the state of New York" (citing *Reagan v. Farmers' Loan & Tr. Co.*, 154 U.S. 362, 392 (1894)); *Reagan*, 154 U.S. at 392 ("The circuit court for the western district of Texas is 'a court of competent jurisdiction in Travis county'" because Travis county is "within the territorial limits of its jurisdiction."). The Second Circuit, in fact, has noted the "widely-accepted rule" that forum selection clauses using the term "in a state" reference "both the state and federal courts of

6

the named state," while the term "of a state" limits jurisdiction to only the state courts. *Rabinowitz v. Kelman*, 75 F.4th 73, 84 (2d Cir. 2023).[1]

To be sure, the Second Circuit's discussion concerned a forum clause that used the term "*in* a state," whereas the clause here designates courts "*within* a state," but the prepositions "in" and "within" are near-synonymous. *See, e.g.*, *Within*, Merriam-Webster.com, (defining "within" as "*in* or into the interior" (emphasis added))[2]; *Within*, Dictionary.com, (defining "within" as "*in* or into the interior or inner part" (emphasis added)).[3] Courts construing forum selection clauses accordingly have interpreted the two terms identically. *Compare, e.g.*, *DCA Food*, 470 F. Supp. at 582 (finding federal district court to be a "a court of competent jurisdiction' within the state of New York"), *with FindWhere Holdings, Inc.*, 626 F.3d at 755 ("the term 'in [a state]' . . . permit[s] jurisdiction in both the state and federal courts of the named state"). Because this Court is "within the territorial limits" of New York state, it is thus a court of competent jurisdiction "in" or "within" the state. *Reagan*, 154 U.S. at 392. Adjudicating this case in this Court complies with the forum selection clause.

Pumpkin next argues that because XL moved for dismissal in the Central District of California, and because that federal court dismissed the case rather than transferring it to this Court, the forum selection clause must not include federal courts in New York. *See* Pumpkin Remand Br. at 3–4. XL could have moved to transfer and the district court in California could have elected to transfer rather than dismiss for lack of proper venue. *See Atl. Marine Const. Co.*

---

[1] Other circuits also agree that "in" a state refers to "parties' intent as a matter of geography." *FindWhere Holdings, Inc.*, 626 F.3d at 755. "Federal district courts may be *in* [a state], but they are not *of* [the state]." *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003).

[2] https://www.merriam-webster.com/dictionary/within

[3] https://www.dictionary.com/browse/within

7

*v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). Those decisions, however, do not have any bearing on this Court's construction of the familiar language of the forum selection clause. And the California district judge's uncertainty as to which "particular federal district in New York" the case should be transferred does not limit this Court's authority to find that this District is a venue consistent with that clause. Dkt. 1, Ex. 1 at 27.[4]

\*\*\*

In sum, the notice of removal was timely filed, and the forum selection clause embraces this District as a "court of competent jurisdiction" within New York state. The Court therefore denies Pumpkin's motion to remand.

## III.   Motion to Dismiss

### A.   Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a complaint need not contain "detailed factual allegations," it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555. The facts pled "must be enough to raise a right to relief

---

[4] There is, separately, a colorable argument that Pumpkin, by bringing suit in California, waived its right to enforce the forum selection clause. *See, e.g., Licensed Prac. Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 410 (S.D.N.Y. 2000); *In re Rationis Enterprises, Inc. of Panama*, No. 97 CV 9052 (RO), 1999 WL 6364, at \*2 (S.D.N.Y. Jan. 7, 1999). Because the clause does not favor Pumpkin's challenge to venue in this district, the Court does not have occasion to reach that issue. *Cf. Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (general presumption against waiver of forum selection clause).

8

above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* On a motion to dismiss, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999).

As relevant here, "[a] statute of limitations defense may be raised by way of a motion to dismiss if the defense appears on the face of the complaint." *In re Merill Lynch Auction Rate Secs. Litig.*, 758 F. Supp. 2d 264, 274 (S.D.N.Y. 2010) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

### B.    Discussion

XL moves to dismiss this action as time-barred. It argues that Pumpkin brought suit outside the two-year filing deadline set in the XL Policy under which it sues. XL Br. at 2.

The XL Policy provision reads:

**SERVICE OF SUIT AND CHOICE OF LAW**

In the event that any disagreement arises between the "Insured" and the "Company" requiring judicial resolution, the "Insured" and the "Company" each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York. The "Insured" and the "Company" further agree to comply voluntarily with all the requirements necessary to give such court jurisdiction. Any suit shall be barred (i) if commenced before the "Insured" has given notice and permitted the "Company" reasonable opportunity for adjustment; or *(ii) if commenced more than twenty-four (24) "months" after the inception of "damage" unless the "Company" agrees in writing after "damage" to extend that suit limitation period.*

XL Policy at 72 (emphasis added). The Policy thus purports to set a two-year filing deadline that begins to run at "the inception of 'damage[.]'" *Id.* New York law allows contracting parties to set a limitations period shorter than set by statute. *See John J. Kassner & Co. v. City of New York*, 415 N.Y.S.2d 785, 789 (1979) (parties can contract for shorter limitations period as long as reasonable); *Stonewall Contracting Corp. v. Long Island Rail Rd. Co.*, 129 N.Y.S.3d 433, 436

9

(2d Dep't 2020). Contracting parties may also specify the accrual date, provided that it does not contravene public policy. *See Lichter Real Est. No. Three, L.L.C. v. Greater N.Y. Ins. Co.*, 841 N.Y.S.2d 93, 93 (2007) (enforcing insurance policy provision requiring any legal coverage action to be "brought within two years of the date the direct physical loss or damage occurred"); *cf. Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107–08 (2013) (under federal law, where parties can agree to a specific limitations period, they must also be able to contract to the commencement of that period, because the "duration of a limitations period can be measured only by reference to its start date"). Pumpkin does not contend that the XL Policy provision is void. On the contrary, like XL, it treats that provision as governing. *See* XL Br. at 7–10; Pumpkin Resp. Br. at 5.

Applying that provision, which keys the start of the limitations period to "the inception of 'damage,'" Pumpkin's Complaint pleads that the water damage to its property occurred at some point in March 2021. Compl. ¶¶ 16–17 ("In or about March 2021, a major water loss occurred at the subject property."). The 24-month limitations period thus expired by the end of March 2023. However, Pumpkin waited until December 5, 2023, to file this action in New York state court. Dkt. 1 ¶ 2. That date is far outside the two-year window to bring suit under the XL Policy.

Pumpkin makes various arguments why its lawsuit is not untimely. Each lacks merit.

*First*, Pumpkin suggests that the limitations period should be tolled because of some unspecified action or conduct by XL that "is responsible for [Pumpkin's] failure to comply in time with the conditions precedent." Pumpkin Resp. Br. at 5 (quoting *Proc. v. Home Ins. Co.*, 270 N.Y.S.2d 412, 415 (1966)). But Pumpkin's complaint, even read liberally, does not allege any facts suggesting that XL—or any other defendant—took any actions to induce Pumpkin to put off legal action under the Policy. *Cf.* Compl. ¶¶ 17–24. On the contrary, the Complaint

10

portrays XL as unwavering in refusing to honor Pumpkin's claim. *Id.* ¶ 18. Nothing about that conduct logically should have caused Pumpkin to defer litigation until after the Policy deadline. *Compare N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 292 Fed. App'x 73, 76 (2d Cir. 2008) (district court properly tolled statute of limitations where insurer took affirmative steps indicating to insured the likelihood that claim would be treated a certain way, waited until four days after insurer knew limitation period expired to issue declination letter); *see also Plon Realty Corp. v. Travelers Ins. Co.*, 533 F. Supp. 2d 391, 395 (S.D.N.Y. 2008) ("Only if a carrier engages in a course of conduct which lulls the policy holder into inactivity in the belief that its claim will be paid, or where the insured is induced by fraud or misrepresentation to refrain from commencing a timely action, will the carrier be estopped from asserting the statute of limitations defense."). Nor does Pumpkin's memorandum of law identify a factual basis for tolling or otherwise extending its filing deadline.

*Second*, Pumpkin argues that its New York lawsuit is saved by New York Civil Practice Law and Rules ("CPLR") § 205. Under CPLR § 205, where a plaintiff timely files an action that is dismissed for reasons other than a merits determination or failure to prosecute, the plaintiff can refile an action based on the same transaction or occurrence within six months of the dismissal, and still rely on the filing date of the initial action for purposes of a timeliness challenge. On this basis, Pumpkin argues that the date it filed the California litigation—May 11, 2023—governs here. Pumpkin Resp. Br. at 1, 6.

That argument fails for two independent reasons. For one, the New York savings clause applies only when an initial action was filed in New York state. *See MRE Tech. Solutions LLC v. Smiths Detection, Inc.*, 187 N.Y.S.3d 633, 431 (1st Dep't 2023) (tolling based on a "prior action" unwarranted under CPLR § 205(a) where previous action was filed in Maryland; "an out-

11

of-state action is not a 'prior action' within the meaning of that provision" (quoting *Deadco Petroleum v. Trafigura AG*, 58 N.Y.S.3d 16, 17 (1st Dep't 2017)). The California action thus is ineligible to serve as a predicate for application of the savings clause. *See Deadco Petroleum*, 58 N.Y.S.2d at 17 (action timely filed in California was "out-of-state" and incapable of implicating CPLR § 205(a)). Second, Pumpkin's California action was not timely filed. Pumpkin filed the California action on May 11, 2023. Pumpkin Resp. Br. at 1. That is at least one month outside of the two-year limitations period provided for in the XL Policy, which was triggered by the inception of damage.[5] The California litigation thus could not salvage the instant action from XL's claim of untimeliness.

*Third*, Pumpkin argues that California law supports the timeliness of its claim, because California's tolling principles are more permissive than New York's. *See* Pumpkin Resp. Br. at 7–8 (arguing that New York borrowing statute would allow California statute of limitations and tolling law to apply in this case, and that in California the statute of limitations would not start running until the issuance of a formal declination letter). That is wrong. Under New York CPLR § 202—which governs in this diversity action—where a claim accrued out of state, and where New York limitations statutes and equitable doctrines conflict with those of the state where the claim occurred, the shorter of the two periods govern. C.P.L.R. § 202. Any conflict between New York and California law thus cannot assist Pumpkin, because the resulting

---

[5] In moving to dismiss based on *forum non conveniens* in the Central District of California, XL did not separately argue for dismissal based on untimeliness. It did not, however, thereby waive its right to later pursue such an argument, as a statute of limitations defense "need not be raised in a pre-answer motion." *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991) (quoting *Santos v. District Council of N.Y.C.*, 619 F.2d 963, 967 (2d Cir. 1980)).

limitations period could not be any longer than as analyzed above. In any event, Pumpkin does not explain why California law would excuse its untimely filing of the initial Complaint there.

Pumpkin's claims against XL are thus untimely under the XL Policy. XL's motion to dismiss those claims is granted.

## CONCLUSION

For the foregoing reasons, the Court denies Pumpkin's motion for remand and grants XL's motion to dismiss all claims against it. The Clerk of Court is respectfully directed to terminate all pending motions.[6]

By separate order today the Court will schedule an initial pretrial conference and direct the parties to submit a proposed case management plan.

Separately, insofar as the Court previously granted the request of defendant USPI for an extension of time to answer the complaint until 30 days after the resolution of Pumpkin's motion to remand, USPI's answer is now due **July 29, 2024**.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 27, 2024
       New York, New York

---

[6] The Court does not have occasion to consider whether a similar limitations defense might be available to co-defendant Valley Forge, which preserved such an argument in its state-court answer, Dkt. 7, Ex. 5, but has not moved here to dismiss.